**William CONRAD and Vickie
L. Conrad, Plaintiffs,**

v.

**UNITED INSTRUMENTS, INC., Tokyo
Aircraft Co., Ltd., Tokyo Kokukeiki Kabashiki Kaisha d/b/a TKK, and United
States of America, Defendants.**

**No. 97–C–073–S.**

United States District Court,
W.D. Wisconsin.

Nov. 6, 1997.

Carroll E. Metzner, Bell, Metzner, Gierhart & Moore, S.C., Madison, WI, Richard B. Thaler, David W. Feeney II, Thaler & Thaler, Ithaca, NY, for William P. Conrad, Vickie L. Conrad.

Louis F. Raymond, Michael R. Wherry, Davis & Luelthau, S.C., Milwaukee, WI, for TKK, United Instruments, Inc.

Gregory S. Winton, U.S. Dept. of Justice, Torts Branch, Civil Div., Washington, DC, Steve O'Connor, Asst. U.S. Attorney, Madison, WI, for U.S.

## MEMORANDUM and ORDER

SHABAZ, Chief Judge.

Plaintiffs William and Vickie Conrad bring this action against defendants United Instruments, Inc., Tokyo Aircraft Co., Ltd., Tokyo Kokukeiki Kabashiki Kaisha ("TKK"), and United States of America to recover damages resulting from injuries Mr. Conrad suffered in an airplane crash. Plaintiffs allege that a faulty altimeter manufactured and distributed by the defendant corporations and approved by the United States caused the crash. They seek to hold defendants liable on theories of negligence, strict product liability and breach of express and implied warranty.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

The matter is presently before the Court on plaintiffs' motion for an order declaring that Allan J. Lunquist may testify.

The following relevant facts are undisputed.

## FACTS

Allan J. Lundquist is a retired employee of the Federal Aviation Administration. In the course of his employment with the FAA Lundquist conducted an investigation into allegations that altimeters manufactured by TKK and distributed by United Instruments were defective and causing aircraft accidents. Lundquist prepared a report for the FAA summarizing his investigation, the evidence he obtained and reviewed, and his findings and recommendations concerning the altimeters. He also prepared a statement regarding his investigation for a special agent of the FAA.

Lundquist was later deposed in the matter of *Andrew Webb, et. al. v. United Instruments, et. al.* He was an FAA employee at the time and was instructed by FAA's counsel not to testify concerning many aspects of his investigation. However he was allowed to authenticate and briefly discuss the two documents he drafted.

By affidavit Lundquist states:

I was, and remain, especially concerned because immediately after my deposition on December 2, 1994 I was told by the FAA's counsel, Mark Baylen, that if I testified in any matter concerning my investigation and findings, the United States would seek to prosecute me to the fullest extent of the law. I was also told that because I was an FAA employee that participated in a special investigation I would be restricted from testifying about my specific findings as well as other issues relating to the FAA's safety mission. He also told me that even after I retired from the FAA I still would not be able to fully testify concerning my investigation.

Lundquist has since retired from the FAA. Plaintiffs' counsel met with Lundquist in June, 1997 to discuss his investigation of the TKK altimeters and review several binders of related documents. However Lundquist has refused to be deposed in this matter or permit the plaintiffs to obtain copies of the documents in his possession for fear of civil or criminal liability. Plaintiffs have sought the United States' permission for Lundquist to testify but the United States has refused. In a letter dated September 17, 1997, counsel for the United States wrote:

Unfortunately, at this time the U.S. is unable to provide a written assurance that Mr. Lundquist may freely testify and cooperate with you concerning his investigation, or that the U.S. will not exact any manner of punishment or retribution as a result of his acting on plaintiffs' behalf in this matter.

Accordingly plaintiffs brought this motion on September 30, 1997 seeking an order allowing Lundquist to testify on their behalf without risk of retribution.

## MEMORANDUM

Plaintiffs primarily seek a declaration that Allan J. Lundquist's testimony in this matter would comply with 18 U.S.C. § 207. Broadly stated, this provision prohibits a former employee of the executive branch of the United States from testifying as an expert witness against the United States regarding matters in which the person participated as a government employee. 18 U.S.C. § 207(a). However the provision allows such employees to testify as expert witnesses against the United States pursuant to court order. 18 U.S.C. § 207(j)(6). It imposes no other limitation on the ability of former employees to testify under oath against the United States. *Id.* Violations of 18 U.S.C. § 207 may be punished by up to 5 years in prison or a fine of $50,000. 18 U.S.C. § 216.

The Office of Government Ethics has issued regulations to guide federal agencies in applying the Act's administrative enforcement provisions. *See* 5 C.F.R. Part 2637. The regulations provide that a former government employee may testify as an expert witness against the United States:

> [I]n any proceeding where it is determined that another expert in the field cannot practically be obtained; that it is impracticable for the facts or opinions on the same subject to be obtained by other means; and that the former Government employee's testimony is required in the interest of justice.

5 C.F.R. § 2637.208(b)(2). The implementing regulations also interpret 18 U.S.C. § 207 to allow former employees to "testify from personal knowledge as to occurrences which are relevant to the issues in the proceeding, including those in which the former Government employee participated, using his or her expertise." 5 C.F.R. § 2637.208(b)(1).

Plaintiffs contend that Lundquist should be allowed to testify as an expert witness because his testimony is crucial to plaintiffs' case. In the alternative they seek an order declaring that he may testify as to matters within his personal knowledge. If Lundquist is allowed to testify on either ground, plaintiffs ask the Court to declare him immune from any civil and criminal liability attributable to his testimony.

The Court declines to grant plaintiffs' motion because the opinion plaintiffs seek would be purely advisory. Article III, Section 2 of the United States Constitution limits the power of the federal courts to "cases" and "controversies." This limitation precludes federal courts from issuing purely advisory opinions. *See Flast v. Cohen,* 392 U.S. 83, 96, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947. Accordingly an issue is not ripe for decision if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Air Crash Disaster at Detroit Metro. Airport,* 737 F.Supp. at 402, quoting *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 580–81, 105 S.Ct. 3325, 3333, 87 L.Ed.2d 409 (1985).

Whether Lundquist will be criminally or civilly liable for the testimony he gives in this matter, should he decide to testify, is not an issue ripe for decision. It rests upon too many contingencies. It need not be decided if Lundquist chooses not to testify, if the government decides not to prosecute or fine him, or if a Grand Jury decides not to issue an indictment in the event the government seeks a criminal prosecution. Should the issue survive these contingencies, it may be resolved by a court applying the law to a record of that which Lundquist actually said. This Court declines to advise the plaintiffs as to the scope of a federal statute in order to resolve a hypothetical and abstract dispute that may never materialize.

The Court's conclusion here is in accord with *In Re Air Crash Disaster at Detroit Metro. Airport,* 737 F.Supp. 399 (E.D.Mich. 1989). The litigants in *Detroit Metro. Airport* sought a declaration before trial that certain FAA employees could testify against the United States without incurring criminal liability under the Ethics in Government Act. The court refused to grant the motion because it was not ripe for decision. As did the *Detroit Metro. Airport* court, this Court finds *International Longshoremen's & Warehousemen's Union Local 37 v. Boyd,* 347 U.S. 222, 223–24, 74 S.Ct. 447, 448, 98 L.Ed. 650 (1954), instructive:

> Appellants in effect asked the District Court to rule that a statute the sanctions

of which had not been set in motion against individuals on whose behalf relief was sought, because an occasion for doing so had not arisen, would not be applied to them if in the future such a contingency should arise. That is not a lawsuit to enforce a right; it is an endeavor to obtain a court's assurance that a statute does not govern hypothetical situations that may or may not make the challenged statute applicable. Determination of the scope and constitutionality of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function.

The *Detroit Metro. Airport* court found the issue of the proposed witnesses' potential liability not ripe for decision and so does this Court.

Plaintiffs seek to distinguish *Detroit Metro. Airport* on the ground that the United States has threatened Lundquist with prosecution while no such threat was made in *Detroit Metro. Airport.* The witnesses in *Detroit Metro. Airport,* however, were threatened with prosecution. Counsel for the United States notified the witnesses that his review of their deposition testimony indicated that they may have violated the Ethics in Government Act. *Detroit Metro. Airport,* 737 F.Supp. at 400. He informed them that if their deposition testimony were admitted into evidence and deemed to violate the law, the FAA employees may be subjected "to possible criminal and/or administrative sanctions." *Id.* Despite this threat the court concluded that the issue of the witnesses' criminal liability was not ripe for review. It noted that its decision in the civil case before it would not be binding precedent nor have any practical legal effect in a subsequent criminal prosecution of the FAA employees. *Detroit Metro. Airport,* 737 F.Supp. at 403. Accordingly, even in the face of the government's threats, the Court could offer only an advisory opinion at best.

Moreover, even if the threat of government action against Lundquist satisfied constitutional ripeness considerations, prudential ripeness concerns would remain. The threat of prosecution does not dispel the uncertainty surrounding the issue plaintiffs ask this Court to decide. Their own motion exhibits

uncertainty regarding the testimony Lundquist will provide. Plaintiffs ask the Court to authorize Lundquist to testify as an expert witness or in the alternative to testify from his personal knowledge. It is possible that one course of conduct will subject him to liability while the other will not (the Court offers no opinion on the subject). Accordingly the testimony Lundquist actually provides may influence the outcome of the Court's decision. "[A] judicial appraisal of [this matter] is likely to stand on much surer footing ... than could be the case in the framework of the generalized challenge made here." *Toilet Goods Association v. Gardner,* 387 U.S. 158, 164, 87 S.Ct. 1520, 1524, 18 L.Ed.2d 697 (1967).

The Court cautions the parties that it does not today endorse the constitutionality of federal laws and regulations which extensively limit the free speech of former employees of the executive branch as herein addressed. While such limitations may protect the confidentiality of the deliberative process, 49 C.F.R. § 9.1(b)(5), they can also silence former employees who seek to expose incompetence and corruption within the federal government. The extent to which the government may silence its most knowledgeable critics is limited by the Constitution. That constitutional issue in not now before the Court.

■ Due to the Court's particular resolution of this matter, the parties' other arguments regarding plaintiffs' motion are moot, with one exception. Defendants oppose the appearance of Lundquist as a witness in this matter because plaintiffs failed to timely identify him as an expert witness as part of their Rule 26 disclosures. Plaintiffs have adequately explained that they could not claim Lundquist as an expert witness because he has been unwilling to cooperate with the plaintiffs for fear of prosecution. Moreover, plaintiffs notified the defendants in their Rule 26(a)(1) disclosure dated May 1, 1997 of their intent to introduce evidence of Lundquist's findings and investigations. Accordingly the Court finds that the plaintiffs' failure to identify Allan J. Lundquist as an expert witness by September 9, 1997 does

not preclude his appearance as an expert witness in this matter.

*Conrad, et al. v. Tokyo Aircraft Instrument Co., Ltd., et al.*, 988 F.Supp. 1227 (W.D.Wis. 1997)

## ORDER

IT IS ORDERED that defendants' motion for an order allowing Allan J. Lundquist to testify is hereby DENIED.